THE ESSEX PAPER COMPANY

*v.*

CORNELIA JANE GREACEN et al.

1. The principal object intended to be accomplished by the adoption of paragraph 225 of the Rules, requiring a demurrant to state the particular grounds of his demurrer, was to secure greater fairness and thoroughness in the discussion of questions arising on general demurrer than could be had under the old practice.

2. Under paragraph 225 a simple statement of want of equity, in the usual language of a general demurrer, will constitute a sufficient specification of the ground of the demurrer in cases where the court finds, on looking at the complainant's bill, that his right to relief is doubtful or uncertain, but where the defect is obscure or latent to such an extent that the court, on inspecting the complainant's bill, cannot readily discern it, there the demurrant will be required to make a more explicit statement of the ground on which his demurrer is founded.

On application to strike out demurrer.

*Mr. Edward A. Day* and *Mr. John W. Taylor,* for motion.

*Mr. Robert H. McCarter* and *Mr. Thomas N. McCarter, contra.*

VAN FLEET, V. C.

The suit in this case was instituted originally by Elisha M. Fulton against John Greacen, junior, and was brought to obtain a decree establishing Fulton's right to an easement in Greacen's land, for the passage of water from the Morris canal to a paper-mill owned by Fulton, and which water Fulton used to operate his mill, and also to prevent Greacen, pending the litigation, from diverting the water from the mill. After a hearing on an order to show cause why an injunction should not issue, Greacen was enjoined from diverting the water. *Fulton* v. *Greacen, 9 Stew. Eq. 216.* Greacen subsequently died testate, and, after his will had been admitted to probate, his executors and devisees were

substituted as defendants in his place.  While this was the con-
dition of the suit as to parties, Fulton conveyed the mill, to
which the easement in controversy was appurtenant, as well as
his right to the water in dispute, to the Essex Paper Company,
and the Essex Paper Company subsequently, with a view of
obtaining the benefit of the previous proceedings in the cause,
obtained leave, after contest, to file an original bill in the nature
of a supplemental bill.  *Fulton* v. *Greacen, 17 Stew. Eq. 443.*
To the bill which the Essex Paper Company filed under the
leave so given, the defendants have filed a general demurrer,
without further or other statement of the ground of demurrer
than by saying, in the usual language of a general demurrer,
that the complainant has not in and by his bill made or stated
such a case as entitles it to any discovery from the defendants,
or to any relief against them or either of them.  The complain-
ant now moves to strike out the demurrer, because it does not
state the particular ground or cause on which it is founded, as
paragraph 225 of the Rules requires.  That paragraph reads as
follows: " Every demurrer, whether general or special, shall state
the particular grounds of the demurrer."

The new Orders in Chancery of England contain a clause
identical in purpose with our rule.  Rule second of Order 28
requires that a demurrer shall state the specific ground on which
it is founded ; our rule requires that the particular ground shall
be stated ; so that it is manifest from their language that the
scope and design of both are the same.  The meaning of the
English rule is settled.  It was first construed by Mr. Justice
Kay at chambers, and afterwards in the court of appeals by Sir
George Jessel, M. R., and Lord Justices Baggallay and Lindley,
in *Bidder* v. *McLean, L. R. (20 Ch. Div.) 512.*  There, as here,
a general demurrer had been filed, without stating other cause
than want of equity, and there, as here, the complainant applied
to have the demurrer struck out, because it did not specify the
ground on which it was founded.  But the court held, that an
averment of want of equity, in the usual language of a general
demurrer, will constitute a sufficient specification of the ground
of demurrer under the rule, in a case where it appears to the

court, on inspecting the complainant's bill, that his right to re-
lief, assuming all his facts to be true, is doubtful.   The master
of the rolls said: "This is a case in which I must say that the
plaintiff had some reason to expect a general demurrer for want
of equity.   I do not mean to prejudge the question whether
the demurrer will succeed, but the equity is not obvious at first
sight.   *   *   *   I have not heard a suggestion in what better
form the demurrer could have been put in such a case as the
present.   It is urged, that if we hold this demurrer good in
form, the directions in Order 28, Rule 2, will be made nugatory,
but that is not so.   I do not think that it was intended to make
it impossible to demur in a case where the statement of claim is
so framed that the only way of meeting it is by the simple
allegation that it shows no cause of action.   In many cases a
general demurrer like this would be improper, but I think it is
not so in the present case."   And Mr. Justice Lindley said, in
substance, that the specification of the ground of demurrer,
contained in a general demurrer, would not, as a general rule,
be sufficient, but whether it will be sufficient or not, in any
particular case, must depend entirely upon the form in which
the plaintiff has stated his claim.   The English rule, as enforced
in practice, may be correctly stated as follows : Where the court
finds, on looking at the complainant's bill, that his right to
relief is doubtful or uncertain, or, in the words of Sir George
Jessel, that his equity is not obvious at first sight, there a sim-
ple statement of want of equity will, under the rule, constitute
a sufficient specification of the ground of the demurrer, but
where the defect or infirmity, on which the demurrer is founded,
is obscure or latent to such an extent that the court cannot, on
inspecting the complainant's bill, readily discern it, there the
rule requires the demurrant to point out, by a plain statement,
the specific ground on which his demurrer is founded.

This construction gives full effect to the fundamental purpose
intended to be accomplished by the adoption of the rule, which
was to secure greater fairness and thoroughness in the discussion
of questions arising on general demurrer than could be had
under the old practice.   Under the old practice, it sometimes

happened that, although a general demurrer was well founded in point of law, yet the ground upon which it rested was so far beyond the line of vision of the ordinary practitioner that he could not see it without having it pointed out to him, and only lawyers of very extended experience or unusual acumen would readily discern it. A simple allegation of want of equity gave the ordinary practitioner, in such a case, no information whatever of the ground on which his statement of his client's case would be attacked. The demurrer rather emboldened than disturbed him, for not seeing the ground of the demurrer, he supposed none existed, and he would proceed to the argument of the demurrer in ignorance of the ground on which it rested, and generally without preparation, and the consequence was that in such cases the court was either compelled to defer the case for further argument, or to decide it upon an imperfect argument. The purpose of the rule was to cure this mischief, by making it the duty of a demurrant, when he filed his demurrer, to make such a disclosure of the ground of his demurrer as would render it probable, when his demurrer came on for argument, that all the questions raised by it would be fully, fairly and thoroughly discussed.

Adopting the view above expressed as the true interpretation of the rule under consideration, I think the defendants should either make a more explicit statement of the ground on which their demurrer is founded, or that an order should be made striking out their demurrer. A careful reading of the complainant's bill has not satisfied me that it is so plainly and radically defective, that, even if all its averments are taken to be true, still no part of the relief which it asks can be given to the complainant. It may be that it might be shown by argument to be fatally defective—so imperfect as to lay no foundation for any part of the relief which it asks—but its want of equity is not obvious to me at first sight. That being the case, the rule under consideration, as I understand it, makes it the duty of the court to require the demurrants to give a more specific or particular statement of the ground of their demurrer than that contained in their demurrer as at present framed.

The question involved being one purely of practice, and, as such, specially subject to the control of the chancellor, I did not feel authorized to decide it without first submitting my views to him for criticism and revision. He has read this opinion and given the question presented for decision such consideration as his other duties permitted, and I have his permission to state that he concurs in the construction of the rule in question which this opinion adopts.